JOHN CHURCH CO. v. HILLIARD HOTEL CO. et al.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 153.

1. COPYRIGHTS &wkey;66—INFRINGEMENT—PERFORMANCE OF MUSICAL COMPOSITION—"FOR PROFIT."

Under Copyright Act March 4, 1909, c. 320, § 1 (e), 35 Stat. 1075 (Comp. St. 1913, § 9517), giving to the owner of a copyright the exclusive right to perform the copyright work publicly for profit, if it be a musical composition and for the purpose of public performance for profit, but providing that its performance in a coin-operated machine shall not be considered a performance for profit, unless admission is charged to the place where the machine is located; section 25, providing for injunction and damages for infringing the copyright, subdivision 4, of which fixes the damages for every infringing performance of a dramatic or musical composition; and section 28, making willful infringement for profit criminal, but excepting from the provisions thereof the performance of certain sacred and secular works, if the performance is given for charitable or educational purposes, and not for profit—when construed together, the words "for profit" mean a direct pecuniary charge for the performance, such as an admission fee, and do not include a performance in a hotel dining room, intended to increase patronage, but for which no admission fee is charged.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 63; Dec. Dig. &wkey;66.]

2. COPYRIGHTS &wkey;66—INFRINGEMENT—PERFORMANCE OF MUSICAL COMPOSITION.

The proviso contained in Copyright Act § 28, permits the performance of the specified composition where an admission fee is charged, provided the proceeds are applied to charitable or educational purposes.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 63; Dec. Dig. &wkey;66.]

Appeal from the District Court of the United States for the Southern District of New York.

Campbell & Boland, of New York City, for appellants.

House, Grossman & Vorhaus, of New York City (William Grossman and Charles Goldzier, both of New York City, of counsel), for appellee.

Nathan Burkan, of New York City, for petitioner.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of the District Court granting a preliminary injunction restraining the defendants,

viz., the lessee of the Hotel Vanderbilt and the leader of the orchestra, from performing in the dining room of the hotel a copyrighted musical composition owned by the complainant, called "From Maine to Oregon."

[1] When the copyright proprietor of a musical composition sells printed copies of it to the public, the performing right goes with them. For the greater protection of the copyright proprietor, Congress by section 1 (e) of the act of 1909 gives him also the exclusive right—

"to perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit. * * * The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such a reproduction or rendition occurs."

The whole case turns upon the meaning of the words "for profit." Coin-operated machines are, of course, operated directly for profit; but they were excluded if no admission fee were charged, probably because the damages allowed by section 25, subd. 4, would be prohibitory of the business.

In case of infringement section 25 provides:

"Sec. 25. That if any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

"(a) To an injunction restraining such infringement.

"(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement: * * *

"Fourth. In the case of a dramatic or dramatico-musical or a choral or orchestral composition, one hundred dollars for the first and fifty dollars for every subsequent infringing performance; in the case of other musical compositions, ten dollars for every infringing performance."

Section 28 makes willful infringement for profit criminal, as follows:

"Sec. 28. (Penalty for Infringement.) That any person who willfully and for profit shall infringe any copyright secured by this act, or who shall knowingly and willfully aid or abet such infringement, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment for not exceeding one year or by a fine of not less than one hundred dollars nor more than one thousand dollars, or both, in the discretion of the court: Provided, however, that nothing in this act shall be so construed as to prevent the performance of religious or secular works, such as oratorios, cantatas, masses, or octavo choruses by public schools, church choirs, or vocal societies, rented, borrowed, or obtained from some public library, public school, church choir, school choir, or vocal society, provided the performance is given for charitable or educational purposes and not for profit."

[2] This proviso must contemplate the charge of an admission fee, because, if the performance is really "not for profit," it would be perfectly lawful, both under section 1 (e) and under the prior provision of section 28 itself. We must attribute a more plausible intention to Congress. We think it was to permit certain high-class religious and educational compositions to be performed at public concerts where an admission fee is charged, provided the proceeds are applied to a charitable or educational purpose.

Considering the foregoing provisions together, Congress seems to have meant by the words "for profit" a direct pecuniary charge for the performance, such as an admission fee or a fee deposited in a coin-operated machine, although the latter is excepted by the act.

The District Judge held that the performance was public, and that the hotel would not have paid for the playing of the piece, unless it were to gain something thereby. He followed the case of Sarpy v. Holland and Savage, 99 L. T. 317. It involved certain musical compositions published and copyrighted in France, which contained on each a printed notice that the rights of public performance were reserved, though performances at public entertainments which were "gratuitous" or "absolutely free" would be permitted. The defendant Holland was the lessee of a hotel, and he employed the defendant Savage to lead a band of three musicians, who played in his saloon three times a week; no charge being made for the entertainment. The defendants contended that they had not violated the plaintiff's rights, because the entertainment was gratuitous. Cozens-Hardy, M. R., said:

"This performance was paid for by Mr. Holland, the publican, with the view of gain; it was worth his while to pay, I think, 16s. a performance. It was obviously part of the means by which he attracted customers, and hoped to gain, and did gain, a profit in carrying on the business of the hotel. That being so, it seems to be impossible to contend that this was a performance at a gratuitous public entertainment. Obviously the people who went in large numbers every night went there, not merely in the expectation, but with the certainty that they would not go there, and indeed, could not go there, without buying some of the commodities which Holland was there for the purpose of selling. The music was really part of the operations of the hotel, and the license cannot justify what was done."

We think the appellant has very fairly criticized this reasoning. It does not make a performance any less gratuitous to an audience because some one pays the musician for rendering it, or because it was a means of attracting custom, or was a part of the operation of the hotel. There is more in the remaining ground that persons could not go into the saloon without buying something to eat. Still such persons primarily go into the saloon for refreshment and pay for what they order, and not for the music. We are not convinced by this decision that the defendants played "From Maine to Oregon" for profit within the meaning of those words in our Copyright Act. If the complainant's construction of it is right, then a church in which a copyrighted anthem is played is liable, together with the organist and every member of the choir, not only to injunction, but in damages in the sum of $10 for each performance, and the individuals perhaps to fine and imprisonment in addition, because there is an expectation that the congregation will be increased by making the service more attractive.

The order is reversed.